O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERMOND JACKSON, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 5:17-02403 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff Dermond Jackson ("Plaintiff") challenges Defendant Nancy A. Berryhill, Acting Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). Specifically, Plaintiff seeks a remand on the basis that the Administrative Law Judge ("ALJ") should have obtained medical expert testimony to assess a medical report to determine whether Plaintiff met or equaled a listed impairment under the Social Security Act, which determination in Plaintiff's favor would automatically qualify him as

disabled.  For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II. PROCEEDINGS BELOW

Plaintiff filed an application for DIB on February 2, 2015, alleging disability beginning July 9, 2010.  (Administrative Record ("AR") 144-50).  Plaintiff's application was denied initially on March 30, 2015 (AR 76-84), and upon reconsideration on June 18, 2015 (AR 85-95).  A hearing was held before ALJ Michael B. Richardson on December 29, 2016.  (AR 34-75).  Plaintiff was unrepresented by counsel at the hearing and, after being advised of his right to be represented by the ALJ (AR 36-40), he signed an "Acknowledgment of Rights to Representation and Waiver of Right to Representative" on December 29, 2016 (AR 139).

On February 16, 2017, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act[1], since July 9, 2010.  (AR 16-33).  The ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[2]  20 C.F.R. § 404.1520(a)(4).  At **step one**,

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. §423(d)(1)(A).

[2] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.  Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 9, 2010 through his date last insured of December 31, 2015. (AR 21). At **step two**, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure; chronic atrial fibrillation, status post mitral valve replacement and tricuspid repair and coronary artery bypass graft with mechanical valve; ischemic heart disease; hypertension; chronic kidney disease, stage III, with chronic renal failure; gouty arthritis vs. inflammatory polyarthritis; and obesity. (AR 21).

At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 22). The ALJ then found that Plaintiff had the following Residual Functional Capacity[3] ("RFC"):

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for four hours out of an eight-hour workday with regular breaks. He could sit for six hours out of an eight-hour workday with regular breaks. He was unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. He could occasionally climb, balance, stoop, kneel, crouch, and crawl.

(AR 22).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work as an order picker or material handler. (AR 27). At **step five**, the ALJ found that, "[t]hrough the date last insured, considering the claimant's age, education, work experience and residual

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(1)(1).

capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR 27). The ALJ accepted the vocational expert's testimony that claimant, given his age, education, work experience, and residual functional capacity, would be able to perform the requirements of representative occupations such as: Cashier II (DOT[4] 211.462-010); Assembler, small products (DOT 706.684-022); and Assembler, electrical accessories (DOT 729.687-010). (AR 28). As such, the ALJ found that Plaintiff was "not disabled", as defined in the Social Security Act, at any time from July 9, 2010, the alleged onset date, through December 31, 2015, the date last insured. (AR 28).

The ALJ's February 16, 2017 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 29, 2017. (AR 1-6). Plaintiff then filed this action in District Court on November 30, 2017, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

### III. SUMMARY OF APPEAL

Plaintiff raises one issue for review: whether the ALJ properly considered the objective evidence of record. [Dkt. 20, Joint Stipulation ("JS"), 4]. Specifically, Plaintiff contends that the ALJ should have obtained medical expert testimony at <u>step three</u> to assess a medical report dated May 12, 2016 to determine whether claimant met or equaled Listing 4.02.A.2 for chronic heart failure. [Dkt. 20, JS 7]. Plaintiff argues that the Court should remand the case for the ALJ to obtain a medical expert opinion to assist in his analysis. Defendant responds that the Court should affirm the decision of the ALJ because the ALJ is not required to obtain a medical expert opinion to determine

---

[4] Dictionary of Occupational Titles (U.S. Department of Labor, 1991)

that the Plaintiff does not meet a listing and that Plaintiff has failed to carry his burden to establish that Plaintiff meets all the requirements of Listing 4.02.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. §405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the

disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

## V. ANALYSIS

### A. Facts at Issue

Plaintiff's last date of employment was July 9, 2010. (AR 144). At the time, Plaintiff worked for Ralph's Grocery Company at a distribution warehouse performing manual labor as an order selector. (AR 52). Plaintiff testified that he stopped working because he had congestive heart failure and was unable to keep up with his job duties. (AR 55-56).

As detailed in the decision of the ALR, Plaintiff's medical records from 2010 reveal that he was being treated for congestive heart failure through medication and diet. On November 24, 2014, Plaintiff was admitted to the hospital for chest pain and shortness of breath, and underwent urgent mitral valve replacement, tricuspid valve repair, and coronary bypass grafting on November 17, 2014. Plaintiff was discharged home on December 19, 2014. (AR 24).

On December 27, 2014, Plaintiff was admitted to the hospital again for worsening shortness of breath, chest pain, and bilateral lower extremity edema. Plaintiff was found to have fluid overload with renal failure and an exacerbation of his congestive heart failure. Plaintiff was stabilized and discharged on January 9, 2015. (AR 24-25).

Plaintiff continued to receive follow-up treatment for his congestive heart failure in 2015 and 2016, which revealed Plaintiff to be in no acute distress and controlled through medication. (AR 25). Indeed, Plaintiff himself testified his congestive heart

failure and respiratory issues has been under control through medications since his hospitalization in January 2015. (AR 60-61).

On May 12, 2016, Plaintiff underwent an echocardiogram and other procedures. The listed pre-and-post procedure diagnosis on the operative report is supraventricular tachycardia and atrial fibrillation. (AR 521). Included in the physician interpretation of the procedure, and the entire basis of Plaintiff's claim at issue, is the following finding: "The left atrium is severely dilated. The [left atrium] diameter = 6cm." (AR 526). Plaintiff does not address any other findings from the May 2016 medical report, which report was in evidence as an exhibit at the December 29, 2016 hearing. (AR 33 and 521-27; ALJ Hearing Exhibit Component No. HO 11F).

In the ALJ's February 16, 2017 decision, the ALJ did a thorough review and analysis of Plaintiff's medical history and records, giving significant weight to Plaintiff's congestive heart failure issues, and found that Plaintiff's past relevant work exceeded the residual functional capacity of Plaintiff.[5] As such, the ALJ denied Plaintiff benefits.

### B. <u>Plaintiff's Claim of Error</u>

Plaintiff makes only one claim of error in his Complaint. Plaintiff contends that a diagnostic test result from the May 2016 medical report implicates his condition that existed as of December 2015 and that medical expert testimony is required to assess whether the Plaintiff meets or equals a listing based on the test result at step three. [Dkt. 20, JS 7]. Plaintiff raises this issue for the first time here, on appeal to the District Court.

---

[5] In addition to the congestive heart failure issues, Plaintiff also complained of arthritis and limitations related thereto. Plaintiff raises no issue of any error with the ALJ's assessment of his arthritis issues and thus Plaintiff's history related to this issue will not be discussed here

-7-

According to Plaintiff, "The [Social Security] Commissioner describes chronic heart failure as indicating an inability to engage in gainful work activity with an enlarged left atrium greater than or equal to 4.5 cm even with a normal or elevated ejection fraction during a period of stability" (citing 20 C.F.R. part 404, subpart P, Appendix 1, Listing 4.02.A.2). [Dkt. 20, JS 6-7]. Plaintiff points to the finding in the May 2016 medical report that '[t]he [left atrium] diameter = 6cm" (AR 526) and contends that "[w]hether this diagnostic result implicates a condition that existed as of December 2015 constitutes a medical question of fact requiring an expert opinion." Id. Implicit in Plaintiff's claim, is his contention that the medical report finding of a severely dilated left atrium of 6cm results in a finding that Plaintiff meets or equals a listing. Plaintiff points to no other medical evidence or testimony in support of his argument that Plaintiff's condition may meet or equal a listing.

At step three of the sequential evaluation, the Social Security Administration awards benefits to the most severely impaired claimants, regardless of their actual functional ability. See Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court §3:18 (2018). A claimant who satisfies the test at the third step is entitled to benefits, and the evaluation ends. Kennedy v. Colvin, 738 F.3d 1172, 1175 (9th Cir. 2013) ("If [the third step is found in favor of a claimant], the claimant is considered disabled and benefits are awarded, ending the inquiry.") The Social Security Administration has developed a lengthy list of impairments "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§404.1525(a); 416.925(a); Sullivan v. Zebley, 493 U.S. at 525; Lester v. Chater, 81 F.3d at 828. Accordingly, the criteria in the step three listings are "demanding and stringent." Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994). They are "purposefully set

at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" Kennedy v. Colvin, 738 F.3d at 1176 (quoting Sullivan v. Zebley, 493 U.S. 521, 532 (1990)). The list of automatically disabling impairments has been divided into 14 categories for adults, each category encompassing one body system or one category of disorders. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Part A). Within each of the 14 categories, the regulations specify one or more impairments, and the degree of each impairment which is considered severe enough to be disabling as a matter of law.

To qualify for a disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified medical criteria. McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). An impairment that manifests only some of a listing's criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. at 530. A claimant must satisfy all the criteria in a listing in order to meet that listing. Id. Each listed impairment has one or more components, and for each component, the Social Security Administration has prescribed a certain degree of intensity which the agency considers sufficiently serious to disable a claimant. See Kubitschek & Dubin, supra, §3:20. If a claimant's impairment does not satisfy every component, then the impairment does not meet the listing. Sullivan v. Zebley, 493 U.S. at 531; Young v. Sullivan, 911 F.2d 180 (9th Cir. 1990).

**C.     Plaintiff Does Not Meet or Equal a Listing**

As set forth in Section V B, supra, Plaintiff contends that his May 2016 echocardiogram result implicates a finding of disability for section A.2 of Listing 4.02

and for that reason, the case should be remanded to the ALJ.[6] Plaintiff, however, makes no mention of his ability to meet the remainder of Listing 4.02's requirements. Plaintiff's failure is determinative of this appeal.

In full, Listing 4.02 provides as follows:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is **met when the requirements in both A and B are satisfied**.
> **A.** Medically documented presence of one of the following:
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
> **AND**
> **B.** Resulting in one of the following:
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
> c. Decrease of 10mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

---

[6] Plaintiff's precise argument is set forth above on page 8, lines 1-8.

        d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

(20 C.F.R. part 404, subpart P, Appendix 1, Listing 4.02) (<u>emphasis added</u>).  For Plaintiff to be found disabled under this Listing, he needs to establish the requirements in part A as well as part B; part A alone is insufficient.  <u>See</u> <u>Sullivan v. Zebley</u>, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (<u>citing</u> Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).

      Here, Plaintiff's only claim is that he *might* have a condition that satisfies part A, he makes absolutely no argument that he also satisfies a part B requirement.[7]  As

---

[7] Plaintiff does not even argue that he meets all the requirements of part A of Listing 4.02.  Plaintiff contends that his May 2016 echocardiogram medical report indicating the left atrium as being severely dilated and measuring 6cm, may satisfy the requirements of 4.02.A.2.  Plaintiff, however, only includes part of the language of 4.02.A.2 in stating, "[t]he Commissioner describes chronic heart failure as indicating an inability to engage in gainful work activity with an enlarged left atrium greater than or equal to 4.5 cm even with a normal or elevated ejection fraction during a period of stability." [Dkt. 20, JS 6-7].  Plaintiff leaves out additional criteria that must be met.  The exact language of 4.02.A.2 reads:

    2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure).

Plaintiff makes no argument and presents no evidence that his May 2016 medical report also indicates that his "left ventricular posterior wall plus septal thickness total[ed] 2.5cm or greater on imagining."  Rather, the May 2016 medical report instead indicates, [n]ormal left ventricular size and wall thickness, with low normal systolic function." (AR 524).

Plaintiff bears the burden of establishing he meets Listing 4.02, Plaintiff's request for remand for a medical expert to review and analyze the May 2016 medical report with the hope of establishing part A, is insufficient to meet this burden. Even if an expert were to opine that part A of the listing is met, Plaintiff has failed show there is evidence that part B is met. Plaintiff has therefore failed to establish that his condition meets or equals a listing. As such, the May 2016 medical report is neither significant nor probative to the outcome of Plaintiff's claim. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("ALJ is not required to discuss evidence that is neither significant nor probative.").

**D.     There is No Requirement the ALJ Must Utilize a Medical Expert**

Plaintiff also contends that "an ALJ must obtain a medical expert opinion to assess medical testing or whether a claimant meets or equals a listing or just explain the evidence." [Dkt. 20, JS 7]. There is no such requirement. While it is permissible for the ALJ to call a medical expert or advisor when considering whether a claimant meets or equals an impairment listing, it is not required. See 20 C.F.R. § 404.1527(e)(2)(iii) (2016). It is the ALJ, and not a medical expert, that is "responsible for reviewing the evidence and making findings of fact and conclusions of law". 20 C.F.R. § 404.1527(e)(2)(i) (2016). ALJs are not bound by the opinions of medical experts.

**V.  ORDER**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: January 9, 2019

> /s/ Autumn D. Spaeth
> THE HONORABLE AUTUMN D. SPAETH
> United States Magistrate Judge